28 N.J. Super. 491 (1953)
101 A.2d 51
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WILLIAM MIDGELEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1953.
Decided December 1, 1953.
*492 Before Judges CLAPP, GOLDMANN and EWART.
Mr. George A. Gray, Assistant Prosecutor of Monmouth County, argued the cause for plaintiff-appellant (Mr. J. Victor Carton, Prosecutor of Monmouth County, attorney; Mr. Gray on the brief).
*493 Mr. William J. O'Hagen argued the cause for defendant-respondent (Messrs. Stout and O'Hagen, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
On November 29, 1951 the Monmouth County grand jury returned indictment No. 6004 charging defendant Midgeley and two others with the burning of a certain dwelling house of one Aaron Shurman in Long Branch, in violation of R.S. 2:109-1. Other disposition having been made as to the other two defendants, Midgeley was brought to trial on December 15, 1952. A jury was impanelled and sworn and the prosecutor presented his evidence. At the close of the State's case defendant moved for a judgment of acquittal on the ground that the State had failed to prove that the building allegedly burned was a dwelling house. The proofs were that the building in question had not been occupied for a period of two years. The court thereupon granted the motion and ordered entry of judgment of acquittal (Rule 2:7-7(b), now R.R. 3:7-6), stating to the jury that had the indictment been drawn under two other sections of the law pertaining to the burning of buildings, namely R.S. 2:109-2 or 2:109-3, the motion would not have been granted and the case would have been left to the jury to determine.
Thereafter the grand jury, on January 29, 1953, returned indictment No. 6363 charging Midgeley with burning a certain building, described as an unoccupied dwelling house, of one Aaron Shurman, in violation of R.S. 2:109-3(b).
It is conceded that both indictments embrace the identical series of acts and involve the identical burning of the same building on the same date. They differ only in the citation of the statute alleged to have been violated and in the description of the specific building burned. Defendant filed a plea of autrefois acquit to the second indictment. Following oral argument, the trial judge on June 5, 1953 filed his conclusions dismissing indictment No. 6363 and holding, on the authority of State v. Cooper, 13 N.J.L. 361 (Sup. Ct. 1833), State v. Di Giosia, 3 N.J. 513 (1950), and State v. *494 Labato, 7 N.J. 137 (1951), that defendant was in double jeopardy, contrary to the provisions of N.J. Const. 1947, Art. I, par. 11. The State appeals. Rule 2:5-3(b)(7), now R.R. 3:5-5(b)(7).
The appeal is dated June 9, 1953 and is mistakenly taken from the conclusions of June 5, 1953 instead of from the judgment thereafter entered on June 30 and filed July 7, 1953. The fact that the appeal was prematurely taken is of no consequence. Cf. In re Kershner, 9 N.J. 471 (1952).
The definition, nature and history of double jeopardy have been expounded in countless cases and numerous texts. It is an ancient doctrine rooted in the common law and finding its reflection in the express provisions of constitutions, both federal and state. The principle was secured by the successive constitutions of New Jersey. State v. Cooper, 13 N.J.L. 361, 370 (Sup. Ct. 1833); State v. Di Giosia, 3 N.J. 413, 418 (1950); State v. Labato, 7 N.J. 137, 143-144 (1951); 22 C.J.S., Criminal Law, §§ 238, 239, pp. 368-372; 15 Am. Jur., Criminal Law, §§ 359, 360, pp. 38-40; 1 Wharton, Criminal Law (12th ed. 1932), § 395, pp. 538 et seq.
The acquittal obtained on defendant's motion at the close of the State's case on the trial of the first indictment was for variance between the proofs and the charge set out in the indictment. The variance was material and fatal. The question presented on this appeal is, therefore, whether trial on the second indictment would place defendant in double jeopardy. This involves the more basic issue as to the time or stage of the prosecution at which jeopardy attaches.
Just when a person accused is first put in jeopardy at a trial on a charge of committing a crime is a question upon which the authorities are not agreed. 1 Wharton, Criminal Law (12th ed. 1932), §§ 395, 397, pp. 546-567. Different courts have taken extreme positions. In some jurisdictions it has been held that where a demurrer to an indictment has been sustained, the accused has been in jeopardy and may not be tried again for the same offense on a second indictment. Other courts have held that jeopardy does not attach until the case has been tried once upon a valid indictment *495 and finally disposed of by the appellate court, after full opportunity for a hearing on appeal. The general rule has been stated to be that when a person has been placed on trial on a valid indictment or information before a court of competent jurisdiction, has been arraigned and has pleaded, and a jury has been impanelled and sworn, he is in jeopardy. 22 C.J.S., Criminal Law, § 241, p. 375; 15 Am. Jur., Criminal Law, § 369, p. 46. However, the rule has been modified in cases of a material variance between the allegations of the indictment and the proof. Although such a variance entitles the accused to an acquittal on the particular indictment, it has been held that he is still liable to be tried for his crime.
"* * * if accused is acquitted by direction of the court on the ground of material variance, he cannot plead the acquittal as a bar to a second prosecution for he has never been in jeopardy, and when tried on a new indictment the crime then alleged is not the same crime as in the former indictment." 22 C.J.S., Criminal Law, § 268, p. 403; 16 C.J., Criminal Law, § 380, p. 243, notes 2 and 3.
Cf. 2 Wharton, Criminal Procedure (10th ed. 1918), § 1391, pp. 1847-8, note 5.
In State v. Jones, 11 N.J.L. 289, 291 (Sup. Ct. 1830), defendant was indicted for forgery. The indictment was removed by certiorari from the Court of Oyer and Terminer to the Supreme Court, which sent the cause to trial at circuit. At the trial a variance was found between the instrument as set forth in the transcript of the indictment and that produced in evidence and alleged to have been forged. The variance consisted in the omission of several words contained in the latter. Jones was acquitted and moved for final judgment on the postea. The State then sought to produce the original indictment and moved that Jones be held for trial on that indictment before the next Oyer and Terminer of the county. The court rejected the offer, holding the State could not at that late date show that the return was untrue, and that in legal contemplation the only indictment in existence was that sent up on the return. *496 The court further stated that it could not hold Jones to appear at the next Oyer and Terminer for trial on the original indictment, certiorari having completely arrested the same. It then said, significantly:
"* * * An escape from trial is not however a necessary consequence. Another indictment may be found. An acquittal on this indictment would be no bar to another indictment correctly drawn. Cogan's case, Leach."
The case was approved in Smith and Bennett v. State, 41 N.J.L. 598, 614 (E. & A. 1879). In that case Chief Justice Beasley held that where a conviction of murder had been reversed by the Court of Errors and Appeals for mistakes in law, the court could direct a venire de novo to be issued. In holding the defendant's plea of second jeopardy to be without merit, the Chief Justice stated:
"* * * There is nothing inconsistent with the precepts of natural justice in the retrial of a person charged with crime, provided there is reasonable ground to believe that, on the first essay, a just result has not been reached. In such a position of affairs it would be manifestly just that the matter should be re-investigated, as well on the application of society as on that of the party criminated. Where, from a prosecution, either an acquittal or conviction has resulted, and from further examination it is made to appear that such conclusion does not express the truth of the case, the legitimate course would be to correct the error, and to substitute for it such truth." (at page 600)
See City of Newark v. Pulverman, 12 N.J. 105, 110-111 (1953), quoting these remarks.
It was in the course of discussing the effect of constitutional provisions relating to double jeopardy that Chief Justice Beasley referred with apparent approval to State v. Jones. He also referred to Conway and Lynch v. Queen, 7 Irish L.R. 149 (Q.B. 1845), in discussing the main question raised by the appeal, and spoke of Justice Crampton's "memorable" dissent. (These views were later adopted by the Queen's Bench in Winsor v. Queen, L.R. 1 Q.B. 289 (1866)). In discussing what is meant by the principle that a person shall not twice be put in jeopardy, Justice Crampton *497 cited several instances where the principle did not apply, among them
"the case where upon a good indictment there has been an acquittal, not upon the merits, but upon the ground of a variance, * * *. In such cases, notwithstanding an acquittal, the prisoners may be tried again upon a new indictment: Rex v. Sheen [2 Car. & P. 634]. In those cases the prisoner's life was held not to have been in jeopardy, because he could not properly have been convicted upon the first indictment, although he was formally tried for and acquitted of the charge." (at page 179)
The English view finds expression in Regina v. Green, 7 Cox C.C. 186 (Ct. Crim. App. 1856), where a defendant was indicted for stealing two pairs of boots belonging to Rowland Button when, in fact, the boots actually belonged to his father John. An acquittal was taken on the indictment and a new indictment brought for stealing the boots belonging to John. The court held that the plea of autrefois acquit was not valid, Judge Erle stating that "* * * the prisoner was therefore acquitted upon an indictment upon which she was never in peril of a conviction." Rex v. Cogan, 1 Leach C.C. 389 (K.B. 1787); Rex v. Taylor, 3 Barn. & C. 502 (K.B. 1824).
Among the cases which have held that an acquittal on the ground of material variance was no bar to a second prosecution on a new indictment are Commonwealth v. Mortimer, 2 Va. Cas. 324, 4 Va. 325 (Gen. Ct. 1822); Commonwealth v. Wade, 17 Pick. 395, 34 Mass. 395 (Sup. Jud. Ct. 1835); Hite v. State, 17 Tenn. 357 (Sup. Ct. 1836); State v. Risher, 1 Rich. L., S.C. 219 (S.C. Ct. App. 1844); State v. Jenkins, 20 S.C. 351 (Sup. Ct. 1883); State v. Kimball, 7 Pennewill, Del. 146, 77 A. 412 (Del. Gen. Sess. 1909); Reynolds v. State, 58 Tex. Cr. R. 273, 124 S.W. 931 (Ct. Cr. App. 1910); State v. Jacoby, 25 N.M. 224, 180 P. 462 (Sup. Ct. 1919); State v. Crisp, 188 N.C. 799, 125 S.E. 543 (Sup. Ct. 1924); State v. Todd, 145 Wash. 647, 261 P. 397 (Sup. Ct. 1927), error dismissed, Todd v. State of Washington, 277 U.S. 611, 48 S.Ct. 527, 72 L.Ed. 1014 (1928). State v. Schwartz, 5 W.W. Harr., Del. 415, 166 *498 A. 665 (Del. Gen. Sess. 1932), is a case closely akin to this one and collects some of the authorities.
Other cases to the same effect, based upon statutes providing that an acquittal because of variance is no bar to a trial on a new indictment, include People v. Meakim, 61 Hun., N.Y. 327, 15 N.Y.S. 917 (N.Y. Sup. Ct. 1891); Commonwealth v. Campopiano, 254 Mass. 560, 150 N.E. 844 (Sup. Jud. Ct. 1926); People v. Allan, 80 Cal. App. 709, 252 P. 779 (D. Ct. App. 1927) and People v. Castillo, 28 Cal. App. 190, 151 P. 746 (Cal. Dist. Ct. App. 1915), both of which cite People v. McNealy, 17 Cal. 332, 333 (Sup. Ct. 1861); State v. Gowan, 178 S.C. 78, 182 S.E. 159 (Sup. Ct. 1935); Young v. State, 185 Tenn. 596, 206 S.W.2d 805 (Sup. Ct. 1947). In People v. McNealy the court held that the statute did not conflict with the California Constitution which provided that "no person shall be subject to be twice put in jeopardy for the same offense." The court said (17 Cal. 332, 335):
"It would be a contradiction in terms to say that a person was put in jeopardy by an indictment under which he could not be convicted, and it is obviously immaterial whether the inability to convict arise from a variance between the proof and the indictment, or from some defect in the indictment itself. If the variance be of such a character that a conviction is legally impossible, the party charged is not in jeopardy within the meaning of the Constitution, and an acquittal under such circumstances cannot be pleaded in bar to a second indictment."
We hold, therefore, that defendant was, in the circumstances here present, not put in jeopardy by the first trial. State v. Kincaid, 9 N.J. Misc. 1194 (1931), a decision of the Essex County Court of Common Pleas, is to the contrary, and we do not follow the view there expressed. The court relied upon Ryley v. Brown, 17 Cox C.C. 79 (Q.B. 1890), a case we do not deem in point. Defendant there was charged with allowing a dangerous dog to be at large on August 21, 1889 and for ten days thereafter. At the hearing the witness for the prosecution admitted that he had no evidence to support the charge except as to August 21. Defendant contended that the offense had not been made out *499 and the court (erroneously, so it was said by one judge on appeal) adopted his contention and dismissed the case. Thereafter he was charged for not keeping the dog under control on August 21. Defendant pleaded double jeopardy; the objection was overruled and the accused convicted and fined. On appeal one judge said that defendant was obviously put in peril on the first hearing; the other judge, as noted, said he could have been convicted on the first occasion.
In support of the judgment dismissing the second indictment defendant cites State v. Cooper, 13 N.J.L. 361 (Sup. Ct. 1833); State v. Mowser, 92 N.J.L. 474 (E. & A. 1919) and State v. Cosgrove, 103 N.J.L. 412 (E. & A. 1927). These cases, like State v. Di Giosia, 3 N.J. 413 (1950), and State v. Labato, 7 N.J. 137 (1951), on which the trial judge rested his opinion, do not deal with the question of variance presented on this appeal.
Defendant argues not only the question of former jeopardy but also, by analogy to civil causes, res judicata. The argument is that the first indictment was valid and charged him with the very same act for which he was indicted the second time; that he was brought to trial in the County Court which undoubtedly had jurisdiction of the offense, and that judgment was entered in that court holding him not guilty. We need pursue the matter no further than to indicate that the doctrine of res judicata comes into play only where there has been a judgment on the merits. Meier Credit Co. v. Yeo, 129 N.J.L. 82 (E. & A. 1942). Where there is a variance and "the jury finds a verdict for the defendant, the plaintiff is precluded from subsequently maintaining an action on the cause of action stated in his complaint. He is not, however, precluded from subsequently maintaining an action on the cause of action which his evidence tended to prove, where there is a different cause of action from that upon which the first action was based." Restatement, Judgments, § 52, comment (e), p. 204, and see comment (g), p. 205, that a judgment not on the merits is not res judicata.
The judgment of dismissal is reversed.